IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISRICT OF ILLINOIS

| | |
|---|---|
| DUEWAYNE SNYDER, SR., | ) |
| | ) |
| Plaintiff, | ) Case No. 23-3738 |
| | ) |
| vs. | ) |
| | ) |
| CHEVRON ENVIRONMENTAL | ) |
| MANAGEMENT COMPANY, | ) |
| | ) |
| Defendant. | ) Jury Trial Demanded |

COMPLAINT AND JURY DEMAND

COUNT I

Construction Negligence Section 414 Restatement

NOW COMES, the Plaintiff, DUEWAYNE SNYDER, SR., by his attorney, R COURTNEY HUGHES of the HUGHES LAW FIRM, and for Count I of his cause of action against the Defendant, CHEVON ENVIRONMENTAL MANAGEMENT COMPANY, states as follows:

Jurisdiction and Venue

1. The plaintiff, Duewayne Snyder Sr, is a resident of the State of Illinois.

2. The defendant, Chevron Environmental Management Company (hereinafter "CEMC" or "defendant"), has its principal office in the State of California.

3. The amount in controversy between the parties exceeds the sum of $75,000.00.

4. Jurisdiction with this court is through diversity of citizenship of the parties under Section 1332(A)(1) of the Federal Rules of Civil Procedure.

5. The event giving rise to plaintiff's cause of action herein occurred in Lawrenceville, Lawrence County, Illinois.

6.      Venue is proper with this United States District Court in Benton, Illinois pursuant to Section 1391(b)(2).

## Cause of Action

7.      As of November 17, 2021, the old Indian Refinery – Texaco petroleum refinery in Lawrenceville, Lawrence County, Illinois, ("the site") was a Superfund Site undergoing environmental cleanup work of the site.

8.      On or after 2011, Texaco Corporation contracted with the defendant, Chevron Environmental Management Company ("CEMC"), to oversee and manage as the general contractor the environmental cleanup work at the aforementioned refinery.

9.      Before November 17, 2021, CEMC contracted with Trihydro Corporation of Laramie, Wyoming, and Entact LLC of Illinois, to perform environmental cleanup work and of the site including but not limited to: management responsibilities, safety duties and responsibilities, coordination of work performed, overseeing work performed and approving work permits and projects.

10.     At all times relevant herein, the defendant, by and through its employees and agents, had the authority, and exercised the authority from time to time, with right of control of the work performed by the defendant's contractors, including the right to inspect the work, coordinate the work, schedule the work, start the work, stop the work, direct the work, change the work, modify the work, coordinate and conduct job safety meetings, oversee job safety progress, enforce safety rules, and stop unsafe work practices.

11.     Before November 17, 2021, the defendant contracted with Entact LLC to perform environmental remediation work at the site such as removal of contaminated dirt, removal of pipes, removal of tanks and the use of, and maintenance of, heavy equipment.

12. On and before November 17, 2021, the plaintiff was an employee of Entact LLC where the plaintiff's duties included the aforementioned environmental remediation at the site.

13. On November 17, 2021, the defendant directed Entact LLC to replace, repair and/or reposition orange colored fencing markers over a refinery high voltage powerline where the orange-colored fencing was allegedly to serve the purpose of warning truck drivers below of the overhead power line and height of the line.

14. On November 17, 2021, in the morning, the defendant directed Entact LLC and the plaintiff to work in a manlift or aerial lift to replace, repair and/or reposition the orange fencing over a high voltage powerline when the plaintiff was electrocuted causing the injuries and damages to the plaintiff hereinafter alleged.

15. On November 17, 2021, the defendant, had the duty and responsibility to exercise reasonable care in its control over the means, methods, and safety of the plaintiff's work for the protection of the plaintiff while the plaintiff was performing the replacement, repair and/or repositioning of the orange fencing over a high voltage powerline.

16. On November 17, 2021, the defendant, through its employees and agents, failed to exercise its control with ordinary care in one or more of the following respects:

(A) after the defendant's employee on site attempted to open the manual hand break disconnect switch, the defendant failed to verify that the high voltage powerline the plaintiff was working around was at zero-energy through the use of an adequately rated test instrument such as a hot stick voltage detector;

(B) after the defendant's employee on site attempted to open the manual hand break disconnect switch, the defendant failed to obtain zero-energy on the high voltage powerline the

plaintiff was working around by attaching industry standard temporary protection grounding jumper cables;

(C) directed and ordered an electrically unqualified contractor, Entact LLC, and Entact's employee, plaintiff, to perform work near a high voltage power line when the defendant knew, or should have known, that Entact's workers such as the plaintiff were not certified electricians or linemen and were not qualified to work near high voltage powerlines;

(D) the defendant did not follow its own Corporate Electrical Safety Plan and LOTO Plan (lock out tag out plan) by directing and ordering Entact LLC to perform work near a high-voltage powerline when defendant knew or should have known that Entact and its employees, including plaintiff, were not qualified to perform such work;

(E) directed and ordered Entact LLC to place an overhead orange fencing marker on an energized high-voltage powerline when the use of such a fence marker was unnecessary at the site;

(F) failed to contract with a qualified electrician and/or lineman to perform the aforementioned work near a high voltage powerline;

(G) failed to prevent a jumper line associated with the aforementioned high voltage powerline, and located near the aforementioned manual hand break disconnect switch, from touching the electrical pole's adjacent metal bracket which hazardously energized the powerline the plaintiff was working around when the defendant knew, or should have known through prior visual inspection, of the dangerous positioning of the jumper line to the pole's metal bracket, thus putting the plaintiff in mortal danger;

(H) failed to warn the plaintiff that a jumper line associated with the aforementioned high-voltage powerline was hazardously energized and touching the adjacent electrical pole's

metal bracket thereby energizing the powerline the plaintiff was working around when the defendant knew, or should have known through prior visual inspection, of the dangerous position of the jumper line to the pole's metal bracket;

(I) failed to perform the required safety hazard risk assessment before directing and ordering the plaintiff, through Entact LLC, to perform work around a high voltage powerline;

(J) failed to protect the plaintiff from being electrocuted when the defendant knew, or should have known, that the plaintiff was standing in a manlift or aerial lift, and working near a high-voltage powerline that had not been verified to be deenergized and had not been temporarily grounded, as the plaintiff was trying to repair, replace and/or reposition an unnecessary orange fencing marker device on a high-voltage powerline;

(K) knowing that Entact LLC and the plaintiff were not certified electricians and/or linemen to perform the aforementioned task on November 17, 2021, defendant failed to verify that the plaintiff had proper training and education about how to safely work around a high-voltage powerline;

(L) knowing that Entact LLC and the plaintiff were not certified electricians and/or linemen to perform the aforementioned task on November 17, 2021, defendant failed to ensure plaintiff could safely achieve zero energy verification when defendant knew that the plaintiff was not provided with an adequately rated test instrument such as a hot stick voltage detection device, and when the defendant knew that the plaintiff was not provided with the required arc flash personal protective equipment;

(M) failed to have a qualified and trained supervisor and manager at the site for safety while the plaintiff was working around a high-voltage powerline with inadequate safety equipment; and

(N) failed to follow the required steps and protocol to provide the plaintiff with an electrically safe work environment.

17.     As a direct and proximate result of one or more of the aforementioned negligent acts or omissions on the part of the defendant, the plaintiff suffered one or more the following injuries and damages:

(A) past and future medical bills;

(B) past and future lost wages;

(C) past and future physical pain and mental suffering;

(D) disfigurement;

(E) disability

WHEREFORE, the Plaintiff, Duewayne Snyder, Sr., prays for judgment against the defendant, CEMC, for a sum in excess of $75,000.00; costs of suit and DEMANDS TRIAL BY JURY OF SIX (6) PERSONS.

By: s/R. Courtney Hughes
R. Courtney Hughes
Illinois Bar No.:  6190301
HUGHES LAW FIRM
Attorneys at Law
1317 W. Main St.
P. O. Box 579
Carbondale, IL  62903-0579
Ph:  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
Fx:  618-549-0188
Em:  rchughes@injury-laws.com

Count II

Common Law Negligence

NOW COMES the Plaintiff, DUEWAYNE SNYDER, SR., by his attorney, R. COURTNEY HUGHES of the HUGHES LAW FIRM, and for Count II of his cause of action against the Defendant, CEMC, states, in addition and in the alternative to the other counts contained herein, as follows:

Jurisdiction and Venue

1. The plaintiff, Duewayne Snyder Sr, is a resident of the State of Illinois.

2. The defendant, Chevron Environmental Management Company (hereinafter "CEMC" or "defendant"), has its principal office in the State of California.

3. The amount in controversy between the parties exceeds the sum of $75,000.00.

4. Jurisdiction with this court is through diversity of citizenship of the parties under Section 1332(A)(1) of the Federal Rules of Civil Procedure.

5. The event giving rise to plaintiff's cause of action herein occurred in Lawrenceville, Lawrence County, Illinois.

6. Venue is proper with this United States District Court in Benton, Illinois pursuant to Section 1391(b)(2).

Cause of Action

7. As of November 17, 2021, the old Indian Refinery – Texaco petroleum refinery in Lawrenceville, Lawrence County, Illinois, was a Superfund Site undergoing environmental cleanup work of the site.

8. On or after 2011, Texaco Corporation contracted with Chevron Environmental Management Company ("CEMC") to oversee and manage as the general contractor the environmental cleanup work at the aforementioned refinery.

9. Before November 17, 2021, CEMC contracted with Trihydro Corporation of Laramie, Wyoming, and Entact LLC of Illinois, to perform environmental cleanup work and safety of the site including but not limited to: management responsibilities, safety duties and responsibilities, coordination of work performed, overseeing work performed and approving work permits and projects.

10. At all times relevant herein, the defendant, by and through its employees and agents, had the authority, and exercised the authority from time to time, with the right and duty of control of the work performed by the defendant's subcontractors, including the right to inspect the work, coordinate the work, schedule the work, start the work, stop the work, direct the work, change the work, modify the work, coordinate and conduct job safety meetings, oversee job safety progress, enforce safety rules, and stop unsafe work practices.

11. Before November 17, 2021, the defendant contracted with Entact LLC to perform environmental remediation work at the site such as removal of contaminated dirt, removal of pipes, removal of tanks and the use of, and maintenance of, heavy equipment.

12. On and before November 17, 2021, the plaintiff was an employee of Entact LLC where the plaintiff's duties included the aforementioned environmental remediation at the site.

13. On November 17, 2021, the defendant directed Entact LLC to replace, repair and/or reposition orange colored fencing markers over a refinery high voltage powerline where the orange-colored fencing was allegedly to serve the purpose of warning truck drivers below of the overhead power line and height of the line.

14.     On November 17, 2021, in the morning, the defendant directed Entact LLC and the plaintiff to work in a manlift or aerial lift to replace, repair and/or reposition the orange fencing over a high voltage powerline when the plaintiff was electrocuted causing the injuries and damages to the plaintiff hereinafter alleged.

15.     On November 17, 2021, the defendant, had the duty and responsibility to exercise reasonable and ordinary care in its control over the means, methods, and safety of the plaintiff's work for the protection of the plaintiff while the plaintiff was performing the replacement, repair and/or repositioning of the orange fencing over a high voltage powerline.

16.     On November 17, 2021, the defendant, through its employees and agents, negligently failed to exercise reasonable and ordinary care in its control over the means, methods, and safety of the plaintiff's work for the protection of the plaintiff while the plaintiff was performing the replacement, repair and/or repositioning of the orange fencing over a high voltage powerline, in one or more of the following respects:

(A) after the defendant's employee on site attempted to open the manual hand break disconnect switch, the defendant failed to verify that the high voltage powerline the plaintiff was working around was at zero-energy through the use of an adequately rated test instrument such as a hot stick voltage detector;

(B) after the defendant's employee on site attempted to open the manual hand break disconnect switch, the defendant failed to obtain zero-energy on the high voltage powerline the plaintiff was working around by attaching industry standard temporary protection grounding jumper cables;

(C) directed and ordered an electrically unqualified contractor, Entact LLC, and Entact's employee, plaintiff, to perform work near a high voltage power line when the defendant knew, or

should have known, that Entact workers such as the plaintiff were not certified electricians or linemen and were not qualified to work near high voltage powerlines;

(D) the defendant did not follow its own Corporate Electrical Safety Plan and LOTO Plan (lock out tag out plan) by directing and ordering a contractor, Entact LLC, to perform work near a high-voltage powerline when Entact and its employees, including plaintiff, were not qualified to perform such work;

(E) directed and ordered a contractor, Entact LLC, to place an overhead orange fencing marker on an energized high-voltage powerline when the use of such a fence marker was unnecessary at the site;

(F) failed to contract with a qualified electrician and/or lineman to perform the aforementioned work near a high voltage powerline;

(G) failed to prevent a jumper line associated with the aforementioned high voltage powerline, and located near the aforementioned manual hand break disconnect switch, from touching the electrical pole's adjacent metal bracket which hazardously energized the powerline the plaintiff was working around when the defendant knew, or should have known through prior visual inspection, of the dangerous positioning of the jumper line to the pole's metal bracket, thus putting the plaintiff in mortal danger;

(H) failed to warn the plaintiff that a jumper line associated with the aforementioned high-voltage powerline was hazardously energized and touching the adjacent electrical pole's metal bracket thereby energizing the powerline the plaintiff was working around when the defendant knew, or should have known through prior visual inspection, of the dangerous position of the jumper line to the pole's metal bracket;

(I) failed to perform the required safety hazard risk assessment before directing and ordering the plaintiff, through Entact LLC, to perform work around a high voltage powerline;

(J) failed to protect the plaintiff from being electrocuted when the defendant knew, or should have known, that the plaintiff was standing in a manlift or aerial lift, and working near a high-voltage powerline that had not been verified to be deenergized and had not been temporarily grounded, as the plaintiff was trying to repair, replace and/or reposition an unnecessary orange fencing marker device on a high-voltage powerline;

(K) knowing that Entact LLC and the plaintiff were not certified electricians and/or linemen to perform the aforementioned task on November 17, 2021, defendant failed to verify that the plaintiff had proper training and education about how to safely work around a high-voltage powerline;

(L) knowing that Entact LLC and the plaintiff were not certified electricians and/or linemen to perform the aforementioned task on November 17, 2021, defendant failed to ensure plaintiff could safely achieve zero energy verification when defendant knew that the plaintiff was not provided with an adequately rated test instrument such as a hot stick voltage detection device, and when the defendant knew that the plaintiff was not provided with the required arc flash personal protective equipment;

(M) failed to have a qualified and trained supervisor and manager at the site for safety while the plaintiff was working around a high-voltage powerline with inadequate safety equipment; and

(N) failed to follow the required steps and protocol to provide the plaintiff with an electrically safe work condition.

17.     As a direct and proximate result of one or more of the aforementioned negligent acts or omissions on the part of the defendant, the plaintiff suffered one or more the following injuries and damages:

(A) past and future medical bills;

(B) past and future lost wages;

(C) past and future physical pain and mental suffering;

(D) disfigurement;

(E) disability

WHEREFORE, the Plaintiff, Duewayne Snyder, Sr., prays for judgment against the defendant, CEMC, for a sum in excess of $75,000.00; costs of suit and DEMANDS TRIAL BY JURY OF SIX (6) PERSONS.

By: s/R. Courtney Hughes
R. Courtney Hughes
Illinois Bar No.:  6190301
HUGHES LAW FIRM
Attorneys at Law
1317 W. Main St.
P. O. Box 579
Carbondale, IL  62903-0579
Ph:  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
Fx:  618-549-0188
Em:  rchughes@injury-laws.com

## COUNT III

## Premises Liability

NOW COMES, the Plaintiff, DUEWAYNE SNYDER, SR., by his attorney, R COURTNEY HUGHES of the HUGHES LAW FIRM, and for Count III of his cause of action against the Defendant, CEMC, states, in addition and in the alternative to the other counts contained herein, as follows:

### Jurisdiction and Venue

1. The plaintiff, Duewayne Snyder Sr, is a resident of the State of Illinois.

2. The defendant, Chevron Environmental Management Company (hereinafter "CEMC" or "defendant"), has its principal office in the State of California.

3. The amount in controversy between the parties exceeds the sum of $75,000.00.

4. Jurisdiction with this court is through diversity of citizenship of the parties under Section 1332(A)(1) of the Federal Rules of Civil Procedure.

5. The event giving rise to plaintiff's cause of action herein occurred in Lawrenceville, Lawrence County, Illinois.

6. Venue is proper with this United States District Court in Benton, Illinois pursuant to Section 1391(b)(2).

### Cause of Action

7. As of November 17, 2021, the old Indian Refinery – Texaco petroleum refinery in Lawrenceville, Lawrence County, Illinois, was a Superfund Site undergoing environmental cleanup work of the site.

8. On or after 2011, Texaco Corporation contracted with Chevron Environmental Management Company ("CEMC") to oversee and manage as the general contractor the environmental cleanup work at the aforementioned refinery.

9. Before November 17, 2021, CEMC contracted with Trihydro Corporation of Laramie, Wyoming, and Entact LLC of Illinois, to act perform environmental cleanup work and safety of the site including but not limited to: management responsibilities, safety duties and responsibilities, coordination of work performed, overseeing work performed and approving work permits and projects.

10. At all times relevant herein, the defendant, by and through its employees and agents, had the authority, and exercised the authority from time to time, with right of control of the work performed by the defendant's subcontractors, including the right to inspect the work, coordinate the work, schedule the work, start the work, stop the work, direct the work, change the work, modify the work, coordinate and conduct job safety meetings, oversee job safety progress, enforce safety rules, and stop unsafe work practices.

11. Before November 17, 2021, the defendant contracted with Entact LLC to perform environmental remediation work at the site such as removal of contaminated dirt, removal of pipes, removal of tanks and the use of, and maintenance of, heavy equipment.

12. On and before November 17, 2021, the plaintiff was an employee of the Entact LLC where the plaintiff's duties included the aforementioned environmental remediation at the site.

13. On November 17, 2021, the defendant directed Entact LLC to replace, repair and/or reposition orange colored fencing markers over a refinery high powerline where the

orange-colored fencing was allegedly to serve the purpose of warning truck drivers below of the overhead power line and height of the line.

14. On November 17, 2021, in the morning, the defendant directed Entact LLC and the plaintiff to work in a manlift or aerial lift to replace, repair and/or reposition the orange fencing over a high voltage powerline when the plaintiff was electrocuted causing the injuries and damages to the plaintiff hereinafter alleged.

15. On November 17, 2021, the defendant, had the duty and responsibility to exercise reasonable and ordinary care in its control over the means, methods, and safety of the plaintiff's work for the protection of the plaintiff while the plaintiff was performing the replacement, repair and/or repositioning of the orange fencing over a high voltage powerline.

16. On November 17, 2021, the plaintiff was an invitee of the defendant at the aforementioned site with the permission and knowledge of the defendant about plaintiff's work, and with the reasonable expectation of the plaintiff that the plaintiff would be working in a safe environment at the site.

17. On November 17, 2021, the defendant, through its employees and agents, had the duty and responsibility to provide the plaintiff with safe work premises and to discover and remedy any unsafe electrical conditions that might injure the plaintiff.

18. On November 17, 2021, the defendant, through its employees and agents, negligently failed to provide the plaintiff with safe work premises, and failed to discover and remedy unsafe electrical conditions that might injure the plaintiff, in one or more of the following respects:

(A) after the defendant's employee on site attempted to open the manual hand break disconnect switch, the defendant failed to verify that the high voltage powerline the plaintiff was

working around was at zero-energy through the use of an adequately rated test instrument such as a hot stick voltage detector;

(B) after the defendant's employee on site attempted to open the manual hand break disconnect switch, the defendant failed to obtain zero-energy on the high voltage powerline the plaintiff was working around by attaching industry standard temporary protection grounding jumper cables;

(C) directed and ordered an electrically unqualified contractor, Entact LLC, and Entact's employee, plaintiff, to perform work near a high voltage power line when the defendant knew, or should have known, that Entact workers such as the plaintiff were not certified electricians or linemen and were not qualified to work near high voltage powerlines;

(D) the defendant did not follow its own Corporate Electrical Safety Plan and LOTO Plan (lock out tag out plan) by directing and ordering a contractor, Entact LLC, to perform work near a high-voltage powerline when Entact and its employees, including plaintiff, were not qualified to perform such work;

(E) directed and ordered a contractor, Entact LLC, to place an overhead orange fencing marker on an energized high-voltage powerline when the use of such a fence marker was unnecessary at the site;

(F) failed to contract with a qualified electrician and/or lineman to perform the aforementioned work near a high voltage powerline;

(G) failed to prevent a jumper line associated with the aforementioned high voltage powerline, and located near the aforementioned manual hand break disconnect switch, from touching the electrical pole's adjacent metal bracket which hazardously energized the powerline the plaintiff was working around when the defendant knew, or should have known through prior

visual inspection, of the dangerous positioning of the jumper line to the pole's metal bracket, thus putting the plaintiff in mortal danger;

(H) failed to warn the plaintiff that a jumper line associated with the aforementioned high-voltage powerline was hazardously energized and touching the adjacent electrical pole's metal bracket thereby energizing the powerline the plaintiff was working around when the defendant knew, or should have known through prior visual inspection, of the dangerous position of the jumper line to the pole's metal bracket;

(I) failed to perform the required safety hazard risk assessment before directing and ordering the plaintiff, through Entact LLC, to perform work around a high voltage powerline;

(J) failed to protect the plaintiff from being electrocuted when the defendant knew, or should have known, that the plaintiff was standing in a manlift or aerial lift, and working near a high-voltage powerline that had not been verified to be deenergized and had not been temporarily grounded, as the plaintiff was trying to repair, replace and/or reposition an unnecessary orange fencing marker device on a high-voltage powerline;

(K) knowing that Entact LLC and the plaintiff were not certified electricians and/or linemen to perform the aforementioned task on November 17, 2021, defendant failed to verify that the plaintiff had proper training and education about how to safely work around a high-voltage powerline;

(L) knowing that Entact LLC and the plaintiff were not certified electricians and/or linemen to perform the aforementioned task on November 17, 2021, defendant failed to ensure plaintiff could safely achieve zero energy verification when defendant knew that the plaintiff was not provided with an adequately rated test instrument such as a hot stick voltage detection

device, and when the defendant knew that the plaintiff was not provided with the required arc flash personal protective equipment;

(M) failed to have a qualified and trained supervisor and manager at the site for safety while the plaintiff was working around a high-voltage powerline with inadequate safety equipment; and

(N) failed to follow the required steps and protocol to provide the plaintiff with an electrically safe work condition.

19. As a direct and proximate result of one or more of the aforementioned negligent acts or omissions on the part of the defendant, the plaintiff suffered one or more the following injuries and damages:

(A) past and future medical bills;

(B) past and future lost wages;

(C) past and future physical pain and mental suffering;

(D) disfigurement;

(E) disability

WHEREFORE, the Plaintiff, Duewayne Snyder, Sr., prays for judgment against the defendant, CEMC, for a sum in excess of $75,000.00; costs of suit and DEMANDS TRIAL BY JURY OF SIX (6) PERSONS.

By: s/R. Courtney Hughes
R. Courtney Hughes
Illinois Bar No.: 6190301
HUGHES LAW FIRM
Attorneys at Law
1317 W. Main St.
P. O. Box 579
Carbondale, IL  62903-0579
Ph:  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

Fx:  618-549-0188
Em:  rchughes@injury-laws.com